Filed 11/17/20  P. v. Cruz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK ANTHONY CRUZ,<br><br>    Defendant and Appellant. | H048136<br>(Monterey County<br>Super. Ct. No. 19CR002763) |

## I.    INTRODUCTION

A jury found defendant Mark Anthony Cruz guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and found true the allegation that defendant personally used a deadly weapon, a knife, during the commission of the offense (§§ 667, 969f, subd. (a), 1192.7).  In a bifurcated trial, the trial court found defendant had been convicted of three strike priors and three serious felony priors (§§ 1170.12, subd. (c)(2)(A), 667, subd. (a)).  The court denied defendant's *Romero*[2] motion to strike the prior strikes and sentenced defendant to 25 years to life.

On appeal, defendant's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) that states the case but raises no issues.  We

---

[1]  All further statutory references are to the Penal Code.

[2]  *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

notified defendant of his right to submit written argument on his own behalf within 30 days. Defendant subsequently filed two letter briefs.

As we will explain, pursuant to *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106 (*Kelly*), we have carefully reviewed the entire record, considered defendant's contentions, and determined that there are no arguable issues on appeal. Therefore, we will affirm the judgment.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Following the California Supreme Court's direction in *Kelly, supra,* 40 Cal.4th at page 110, we provide a brief description of the facts and the procedural history of the case.

### A.    *Prosecution Evidence*

At a little after 5:30 p.m. on March 13, 2019, Joseph Graffagnino was outside of a drop-in homeless center in Salinas when he saw defendant trying to kick someone's dog across the street. Graffagnino asked defendant why he was trying to kick the dog. Defendant became defensive and approached Graffagnino while repeatedly shouting, " 'You don't know me, kid.' " Graffagnino told defendant that he saw him kick the dog, but defendant denied it. Defendant stopped at the curb, dropped his backpack, and pulled a knife from his pocket. Graffagnino put his hands up, stating, " '[W]hoa, whoa, whoa, whoa.' " Defendant stabbed Graffagnino on the left side of his torso by his ribcage. Defendant put the knife back in his pocket and continued to shout, " 'You don't know me, kid.' " Graffagnino went inside the center and defendant walked away.

Someone at the center called the police. Defendant went inside and started shouting at the person calling 911, " 'Tell them it's the FBI. Tell them it's the FBI.' " The police arrived and arrested defendant. During a search, police found a folding knife with a three-inch blade in defendant's front right pocket. The blade on the knife was open. Defendant had blood on his hands and a small cut on his left thumb. The knife tested negative for blood. Graffagnino was taken to the hospital.

2

**B.** *Defense Evidence*

Defendant testified that he was homeless in Salinas in March 2019. Defendant kept his personal items with him and sometimes carried a knife for protection. The three-inch folding knife recovered by the police belonged to him.

Defendant stated that he had encountered Graffagnino in the past. Graffagnino was with his friend, Michael, when defendant and Michael got into a fistfight.[3] At some point, Graffagnino hit defendant in the back of the head. After that encounter, defendant tried to avoid Graffagnino and Michael when he saw them around the neighborhood.

On March 13, 2019, defendant was across the street from Graffagnino looking for his bike when he heard Graffagnino say, " 'Don't kick the dog.' " Defendant responded, " 'What dog?' " Defendant told Graffagnino, " 'I didn't kick no dog.' " Graffagnino began swearing at defendant. Defendant "start[ed] to get mad" and crossed the street to ask Graffagnino what he was talking about. By this point, defendant and Graffagnino were yelling at each other.

Defendant testified that Graffagnino started to "com[e] at him aggressively" and clench his fists. Defendant thought that Graffagnino was going to attack him. Defendant "pulled out the knife and . . . poked" Graffagnino once. Graffagnino put up his hands up. Defendant left, but then returned to the homeless center once he heard sirens. Defendant did not know Graffagnino was inside the center.

Defendant admitted that he was convicted of making criminal threats in 2019 and 2014; he was convicted of robbery in 2012; and he was convicted of second degree burglary in 2011.

**C.** *Bifurcated Trial on Prior Conviction Allegations*

The prosecution moved 11 certified prior conviction records into evidence during the bifurcated court trial on the prior strike and prior serious felony allegations. The

---

[3] Michael's last name does not appear in the record.

exhibits showed that in 1997, defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) in Monterey County Superior Court case No. SS972174; in 2011, defendant was convicted of second degree robbery (§§ 211/212.5, subd. (c)) in Santa Clara County Superior Court case No. CC948730; and in 2012, defendant was convicted of second degree robbery (§ 211) in Monterey County Superior Court case No. SS091859A.

### D. *Charges, Verdict, and Sentence*

Defendant was charged with assault with a deadly weapon (§ 245, subd. (a)(1)). It was also alleged that defendant personally used a deadly weapon, a knife, during the commission of the offense (§§ 667, 969f, subd. (a), 1192.7) and that he had been convicted of three strike priors and three serious felony priors (§§ 1170.12, subd. (c)(2)(A), 667, subd. (a)).

A jury found defendant guilty of assault with a deadly weapon and found true the allegation that defendant personally used a deadly weapon, a knife, during the commission of the offense. The trial court found the prior strike and prior serious felony allegations true.

The trial court denied defendant's *Romero* motion to strike the prior strikes. The court imposed and stayed five-year terms for each of the prior serious felony enhancements and sentenced defendant to 25 years to life pursuant to the "Three Strikes" law. The court ordered defendant to pay victim restitution and various fines and fees. The court awarded defendant 848 days of custody credits.

Defendant filed a timely notice of appeal.

### III.   DISCUSSION

Defendant's appointed counsel filed a *Wende* brief that states the case but raises no issues. However, defendant filed two letter briefs raising several claims on his own

4

behalf. We address defendant's claims pursuant to *Kelly*, *supra*, 40 Cal.4th at pages 120-121.

First, defendant contends that his trial counsel was ineffective for failing to request that this case be referred to "C.N.C. court for defendant[s] with mental health issues" or to "a military tribunal" because he was in the military. "To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).)

Here, the record is silent regarding the reason for counsel's decision not to request "C.N.C. court" or a "military tribunal" and thus "affords no basis for concluding that counsel's omission was not based on an informed tactical choice." (*Anderson*, *supra*, 25 Cal.4th at p. 569.) Accordingly, defendant's ineffective assistance of counsel claim fails. (*Id.* at pp. 569-570.)

Second, defendant contends the trial court was "extreme[ly] bias[ed]" against him because "allegedly gang members [he] used to be aligned with threatened [the court's] life" when she was a prosecutor. "In general, if the trial court refuses or fails to disqualify itself, the complaining party must seek disqualification at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification. In doing so, the party must bring to the trial court's attention 'all of the facts' later cited on appeal in support of the judicial bias claim. [Citation.]" (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 994 (*Lewis and Oliver*).)

Here, defendant did not move to disqualify the trial court and has therefore forfeited any claim of judicial bias. (*Lewis and Oliver*, *supra*, 39 Cal.4th at p. 994.)

5

Moreover, based on the record before us, we see no violation of defendant's right to be tried before an impartial judge. Thus, the bias claim also fails on the merits. (See *ibid.*)

Third, defendant contends that his 1997 conviction of assault with a deadly weapon "was found by [a different trial court] not to be a strike" and "frivolous as that may be, [this trial court] took that into consideration as well. The 'victim' in that case was not injured in any way." However, there is nothing in the record on appeal regarding another trial court's determination of the nature of defendant's 1997 prior conviction. To the extent that defendant alleges there is insufficient evidence to support the trial court's finding that the 1997 prior conviction qualified as a strike offense, we conclude otherwise. The abstract of judgment for the prior conviction states that on September 4, 1997, defendant was convicted of "Assault with Deadly Weapon" in violation of section 245, subdivision (a)(1) in Monterey County Superior Court case No. SS 972174. The abstract's specification that defendant was convicted of assault with a deadly weapon is sufficient evidence to support the trial court's determination that the conviction qualified as a strike. (See *People v. Delgado* (2008) 43 Cal.4th 1059, 1069-1070; § 1192.7, subd. (c)(23).)

Fourth, defendant contends the trial court abused its discretion during sentencing. Defendant asserts that the court "state[d] things that could have happened" and references a portion of the sentencing transcript where the court, after it had denied defendant's *Romero* motion, discussed the serious nature of defendant's offense despite the victim's lack of significant injuries.[4] However, once the court appropriately determined there was no legal basis to strike the prior strike allegations, the court had no discretion to depart

---

[4] Before it imposed sentence, the trial court stated, "Although the [victim] . . . wasn't terribly hurt by it, when you put a blade in someone's body you don't know what you're going to hit and what you're not going to hit. I've seen cases where people are stabbed horrifically and are just fine. And I've seen cases where people are stabbed not that horrifically and suffered very serious injuries because it []nicks some vital organ inside."

6

from the Three Strikes sentencing scheme. (See *Romero*, *supra*, 13 Cal.4th at p. 505.) Moreover, the court exercised what sentencing discretion it had in defendant's favor when it stayed the imposition of the section 667, subdivision (a) prior serious felony enhancements and sentenced defendant to a term of 25 years to life instead of 40 years to life. We therefore conclude that the trial court did not abuse its sentencing discretion.

Fifth, defendant contends that his 25 years to life sentence violates the Eighth Amendment because it is cruel and unusual. We determine that defendant's sentence does not constitute cruel and unusual punishment.

In *Ewing v. California* (2003) 538 U.S. 11, 20, the United States Supreme Court considered punishment imposed under California's Three Strikes law. The defendant was convicted of grand theft of three golf clubs worth $ 399 each. (*Id.* at p. 18.) The defendant's criminal history spanned from 1984 to 1993 and included misdemeanor and felony convictions for petty theft, auto theft, battery, burglary, robbery, possession of drugs, trespass, and unlawful possession of a firearm. (*Id.* at pp. 18-19.) The trial court sentenced defendant to 25 years to life. (*Id*. at p. 20.) The Supreme Court explained that in enacting the Three Strikes law, the California Legislature "made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice." (*Id.* at p. 25.)

In addressing the gravity of the offense compared to the harshness of the penalty, the Supreme Court emphasized that the gravity of the defendant's offense included not only his current felony, but also his history of having been convicted of at least two violent or serious felonies. (*Ewing*, *supra*, 538 U.S. at pp. 28-29.) "In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the 'triggering' offense: '[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' " (*Id.* at p. 29.)

7

The court found that "Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." (*Id*. at pp. 29-30, fn. omitted.) Therefore, the court held that "Ewing's sentence of 25 years to life in prison, imposed for the offense of felony grand theft under the [T]hree [S]trikes law, is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition on cruel and unusual punishments." (*Id.* at pp. 30-31.)

Likewise, here, defendant's sentence is amply supported by the seriousness of the offense and defendant's criminal history. Defendant, while on parole and on misdemeanor probation, committed a new strike offense, assault with a deadly weapon, and personally used a knife in the commission of the offense, stabbing the victim near his ribcage. (§§ 667, 969f, subd. (a), 1192.7, subd. (c)(23).) Defendant's criminal history began in 1988 and continued uninterrupted but for periods of incarceration. Defendant had 13 prior felony convictions, three of which were the strike offenses pled and proven here, and 17 prior misdemeanor convictions. On this record, we conclude that defendant's sentence of 25 years to life is not grossly disproportionate and does not violate the prohibition against cruel and unusual punishment.

Sixth, citing *Romero*, *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*),[5] and *People v. Zichwic* (2001) 94 Cal.App.4th 944, 960, defendant asks, "[W]here risk of danger is measured . . . what are the chances of me re-offending or posing an undue danger to society as I would be a senior up in years if I were to [serve] 12-13 more [years] in prison[?]" We understand defendant to contend that the trial court erred when it denied his *Romero* motion to strike his prior strike convictions.

---

[5] Defendant's letter brief cites only "People v. Williams." We assume he is referencing *Williams*, *supra*, 17 Cal.4th 148 because that is a leading Three Strikes case.

In ruling on a *Romero* motion, the trial court must " ' "consider[ ] both . . . the constitutional rights of the defendant, and the interests of society represented by the People. . . ." ' " (*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted.)  The trial court must accord "preponderant weight . . . to factors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161.)  "[N]o weight whatsoever may be given to factors extrinsic to the scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant.  [Citation.]" (*Ibid.*)  Ultimately, the trial court must determine whether "the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*)

We review a trial court's discretionary sentencing choices, including its refusal to strike a prior strike conviction, for an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).)  "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances.  For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Id.* at p. 378.)  An abuse of discretion also occurs where the trial court "strikes a sentencing allegation[ ] solely 'to accommodate judicial convenience or because of court congestion,' " or "simply because a defendant pleads guilty." (*Romero*, *supra*, 13 Cal.4th at p. 531.)  On the other hand, " '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling.' " (*Carmony*, *supra*, at p. 378.)

Here, the trial court did not abuse its discretion when it denied defendant's *Romero* motion. The court stated that it had "thought long and hard about this," and had considered the recency of defendant's prior convictions, defendant's criminal history, and "his prospects for living a law-abiding and productive life outside of custody." The court determined that it was "simply not able to find the defendant falls outside the spirit of the [T]hree [S]trikes law." Because the record demonstrates that the court understood its discretion and weighed the *Williams* factors, we must reject defendant's claim. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.)

In addition to considering defendant's claims, we have carefully reviewed the entire record. We conclude there are no arguable issues on appeal. (See *Wende*, *supra*, 25 Cal.3d at pp. 441-443.)

## IV.  DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
DANNER, J.

*People v. Cruz*
**H048136**